## In re NICOLICH.

(District Court, E. D. Louisiana. January 26, 1927.)

### No. 5833.

1. **Aliens** ☞62(3)—**Service on ship of foreign registry does not necessarily exclude residence for naturalization purposes (Naturalization Act, § 4, subd. 7, as amended by Act May 9, 1918 [Comp. St. § 4352]).**

The provision of Naturalization Act, § 4, subd. 7, as amended by Act May 9, 1918 (Comp. St. § 4352), that residence for naturalization purposes cannot be secured during service on vessels of foreign registry, applies only to the classes of aliens, therein enumerated, who apply for naturalization under its special provisions.

2. **Aliens** ☞62(3)—**Service on fruit steamers making trips between Central American States and New Orleans, though under foreign registry, held not to preclude naturalization.**

An alien making application for naturalization under the general provisions of the naturalization statutes *held* not precluded from citi-

zenship, because serving as master of fruit steamers, owned by citizens of the United States and making short trips between Central American States, where they were registered, and New Orleans, where he resided.

On petition of Marco Nicolich for naturalization. Granted.

BURNS, District Judge. The applicant made declaration of intention on April 18, 1923, and filed petition for naturalization on October 27, 1925, predicated upon an arrival in the United States at New Orleans, August 6, 1914, from the republic of Austria. The petition was filed under the general provisions of the Naturalization Law, alleging continuous residence and good moral character for the five years immediately preceding the petition.

[1] The Examiner of the Bureau of Naturalization opposes petitioner's application on the ground that he had been in almost continuous service on vessels of foreign registry for the major portion of the five years' residence. He contends that subdivision 7 of section 4 of the Act of June 29, 1906, as amended by the Act of May 9, 1918 (Comp. St. § 4352), specifically prohibits the acquiring of residence for naturalization purposes while serving on vessels of foreign registry. He cites in support of his contention United States v. Rodiek (C. C. A.) 162 F. 469, Petition of Donald MacKinnon, 193 App. Div. 893, 183 N. Y. S. 108, and U. S. v. Habbick (D. C.) 287 F. 593. He also refers to several petitions denied in this District Court, where service on vessels of foreign registry was held to interrupt the continuous residence of petitioner as required by law.

I have concluded that the Naturalization Examiner's contention cannot be sustained, because the provisions of subdivision 7 relate specifically to the particular classes of aliens defined therein, viz. Filipinos, Porto Ricans, or aliens in the service of Army or Navy, Marine Corps, Coast Guard, or merchant marine. The particular classes of aliens described in that subdivision must, undoubtedly, comply strictly with the terms specifically described therein for persons of their respective classes.

[2] The applicant here, although he is a seaman—a master mariner—on board a seagoing vessel, did not make application under subdivision 7, by the terms of which he would be permitted to present his declaration of intention and petition for naturalization without proof of the required five years residence in the United States, and be required to make proof of continuous service for three years on board vessels of American registry. He has proceeded under and complied with the general requirements of the act, and this is specifically shown by the filing of his declaration of intention according to subsection 1, his petition for admission to citizenship, accompanied by a certificate of arrival and a certificate of declaration of intention, according to subsection 2. He offered to declare in open court, upon his oath, that he will support the Constitution and laws of the United States, according to subsection 3, and he has offered, in addition, two witnesses, citizens of the United States, as to the fact of his residence for more than five years, to his good character, etc., all according to subsection 4.

From the testimony offered at the hearing, I am satisfied that the applicant has substantially and satisfactorily shown that, preceding his application, he has resided in the United States for more than five years, and within this state and district for more than one year; that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same.

It is true that the testimony of the applicant and his witnesses shows that he has been engaged as a master mariner on vessels of foreign registry, but these are seagoing vessels engaged in the fruit trade between New Orleans and Central American ports, making regular trips, and returning each trip to New Orleans, which he has established as his place of residence. These ships are registered foreign variously in several of the Central American republics, but they are owned by citizens of the United States. The United Fruit Company and the Standard Fruit & Steamship Corporation, as owners, caused these vessels to be carried on foreign registry, presumably as a matter of administrative policy, for business reasons, or for their convenience.

Since the case is not presented under subdivision 7, the registry of the vessel is irrelevant and immaterial. There is nothing in this case to parrallel the case of U. S. v. Habbick, where the applicant left this country to visit his former home in Scotland, and there entered service in the British merchant marine, and thereafter enlisted in the British Army, returning to this country after an absence of some two years.

A sailor, by going to sea, does not abandon his residence, nor is the word "continuously" to be taken as if used literally in the

statute. Circuit Judge Ward, in the case entitled In re Schneider (C. C.) 164 F. 335, said the word "continuously," which is not found in the act of 1802, cannot be construed literally, "else a resident of New York would lose his right if he paid a visit to Europe at any time during the first four years of his residence, or spent a day in Jersey City within the year immediately preceding the day of filing his petition." He said that the use of the word "continuously" was designed to prevent any intermediate change of domicile during the five-year period, and if Congress had meant that the alien must remain actually in the United States, uninterruptedly, it would have used more explicit language, and I am much disposed to accept the reasoning of Judge Ward in that case.

Moreover, District Judge Haight, in the case entitled In re Cook (D. C.) 239 F. 783, supports this view, to the effect that mere temporary absence from the United States, or from a state, within the prescribed period for continuous residence, will not prevent an alien who has actually resided here from securing naturalization. He holds, further, that the absence in each case must be examined to determine whether that period has broken the continuity—citing U. S. v. Cantini (C. C. A.) 212 F. 925; U. S. v. Rockteschell (C. C. A.) 208 F. 530; U. S. v. Mulvey (C. C. A.) 232 F. 513—and he quotes the late Judge Rogers in the Mulvey Case, who held:

"The purpose of requiring aliens applying for citizenship to reside continuously within the country for five years is not only to satisfy the government as to the good faith of the applicant and as to his good character, but it is also to afford the alien a sufficient opportunity to understand and familiarize himself with our institutions and mode of government. In the opinion of Congress five years is none too long a period for this purpose."

The reasoning in this case by Judge Haight is very persuasive. It is true that he denied the petition of the alien, but he made it clear that his sole reason for doing so was that the alien had been continuously absent from the country for two whole years, and had only been within the country for short periods of time during the preceding ten years, and he made special reference to the Schneider Case, cited supra, distinguishing between that case and the one under his consideration.

In the case at bar the petitioner satisfied me that he is above the average in point of intelligence; that the trips of the vessel in the fruit trade to Central American points are frequent; that the voyages made do not result in his absence from the country for more than ten days to two weeks at a time, so that, in addition to having demonstrated the good faith of his residence, he has had ample opportunity to observe and familiarize himself with our government and our institutions, as Congress intended.

The petition will therefore be allowed, and the applicant permitted to take the oath prescribed by the statute.